UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TYRONE WILSON, on behalf of plaintiff and a class, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 12 C 5460 |
| PALISADES COLLECTION, LLC, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the Court on Defendant Palisades Collection, L.L.C.'s ("Palisades") motion to compel arbitration and stay proceedings. For the reasons set forth below, the motion to compel arbitration is granted and the motion to stay is granted.

## BACKGROUND

In December 2004, Tyrone Wilson ("Wilson") entered into a retail installment contract with CarMax-Oak Lawn ("CarMax") for the purchase of a 2002 Chrysler Concorde. Wilson's automobile purchase was financed by Drive Financial Services ("Drive"). Within the retail installment contract was an arbitration agreement. The arbitration agreement states in pertinent part: "You and we and . . . assignees agree that any claim, dispute or controversy arising between us . . . relating to this Contract or the

relationships that result from this Contract . . . [s]hall be resolved by neutral binding arbitration and not by a court action." The original signed installment contract was copied and retained by CarMax while the original was taken with Wilson after the car purchase was finalized. Drive received a copy of the signed installment contract from CarMax and maintained the copy as required to collect payments under the installment contract.

Wilson ceased making the required payments to Drive, and the loan was placed in default status. On or about June 28, 2007, Palisades purchased a pool of delinquent accounts from Santander Consumer USA Inc. ("Santander"), formerly known as Drive. Santander provided Palisades with a Bill of Sale for the transaction which transferred all the rights, title and interest in the pool of retail installment accounts financed by Drive. The transfer of the block of accounts was effectuated through a Forward Flow Debt Purchase, which laid out the terms of the acquisition and the timing of the transfer.

In late October 2007 Palisades sued Wilson in the Circuit Court of Cook County, Illinois (No. 11-M1-169199) for the unpaid principal balance of the retail installment account. Wilson answered the suit and asserted that the collection of the debt was time barred. Subsequently, Palisades non-suited the action.

On July 11, 2012, Wilson filed a two count complaint alleging violations of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 and the Illinois Consumer Fraud

Act, 815 ILCS 505/2. On November 7, 2012 Palisades, eliciting the arbitration agreement in the installment contract, filed a motion to compel arbitration and stay the proceedings pending the completion of arbitration.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") 9 U.S.C. § 2 *et seq.*, indicates a strong federal policy in favor of enforcement of private arbitration agreements. *See Nitro-Lift Techs., L.L.C. v. Howard*, 133 S.Ct. 500, 501 (2012). The FAA declares that as a matter of federal law, arbitration agreements "shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *Moses H. Cone Mem'l Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983). It is well-settled that arbitration is a favored means of dispute resolution, and the FAA established a clear policy favoring arbitration. *See Kiefer Specialty Flooring, Inc. v. Tarkett Inc.*, 174 F.3d 907, 909 (7th Cir. 1999). To effect this policy, we construe any contractual language pertaining to arbitration and resolve doubts in favor of arbitrability. *See Moses*, 460 U.S. at 24-25. Where a contract includes an arbitration clause, the clause creates a presumption that the dispute should be arbitrated, unless the party opposing arbitration can show that the clause is incapable of an interpretation that could cover the dispute at hand. *AT & T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986).

**DISCUSSION**

Wilson does not contest the validity of the arbitration agreement or the coverage of the arbitration agreement to Wilson's specific claims. Wilson's overarching contention is that Palisades does not have a right to enforce the arbitration agreement contained in the installment contract due to the alleged faulty assignment of Wilson's account from Santander to Palisades. Wilson urges the Court to find that Illinois law prohibits Palisades from enforcing the arbitration agreement due to the assignment of less than the full balance of Wilson's account and the failure of Santander to transfer to Palisades the signed, original installment contract. Each argument will be dealt with in turn.

**A. Assignment of the Debt**

Wilson contends that Palisades's acquisition of 80% of the outstanding balance of Wilson's loan constitutes a partial assignment, which under Illinois law is ineffective absent Wilson's assent to the transfer. Under Illinois law, partial assignments are ineffective and not binding on the obligor of the instrument, unless consent is given to the transfer. *Cincinnati Ins. Co. v. Amer. Hardware Mfrs. Assoc.*, 898 N.E.2d 216, 230 (Ill.App.Ct. 2008). An assignment takes place when some identifiable interest is transferred from the assignor to the assignee. *Id.* at 229-30. A valid assignment requires proof of intent to make the assignment and manifestation of that intent, and the

assignor must have either actually or potential possession of the item which he attempts to assign. *Id.*

The creation and existence of an assignment is determined according to the intention of the parties and that intention is a question of fact derived from the instrument executed as well as the surrounding circumstances. *Service Adjustment Co., Inc. v. Underwriters at Lloyd's London*, 562 N.E.2d 1046, 1049 (Ill.App.Ct. 1990). Wilson points to the text of the Forward Flow Debt Purchase which states that Santander assigns to Palisades all rights, title and interest in 80% of the aggregate unpaid principle balance, involved in the transaction. In advocating for an ineffective assignment, Wilson provides only a portion of the relevant part of the Forward Flow Debt Purchase. The Forward Flow Debt Purchase provides for the transfer of aggregate unpaid principle balance of all initial fresh charged-off accounts. As defined in the Forward Flow Debt Purchase agreement an initial fresh charged-off account is merely an account that has been charged off as a result of the repossession and sale of the collateral securing the account and for which Santander has calculated a deficiency balance.

Wilson misreads the scope of the Forward Flow Debt Purchase. Wilson's argument asserts that Santander transferred 80% of Wilson's singular account to Palisades. However the plain language of the Forward Flow Debt Purchase provides

that 80% of the aggregate unpaid principle balance of the pool of delinquent charged-off accounts was transferred, not a portion of an individual account. Furthermore, two days after the Forward Flow Debt Purchase was effectuated, Santander delivered to Palisades a Bill of Sale and an Assignment of the debt which sells, transfers, assigns, sets over, quitclaims and conveys to Palisades all rights, title and interest of Santander in each of the initial fresh charged-off accounts. An assignment operates to transfer to the assignee all the right, title or interest of the assignor to the thing assigned. *Cincinnati*, 898 N.E.2d at 230. Therefore, pursuant to the Forward Flow Debt Purchase and the subsequent Bill of Sale and Assignment, Santander properly assigned its total interest in Wilson's account to Palisades. Because a partial assignment of Wilson's account did not occur there was no need for Wilson to consent to the transfer, and the assignment was valid.

For the aforementioned reasons the Court finds that the Wilson's account was fully assigned to Palisades.

**B. Delivery of the Original Contract**

Wilson argues that Santander failed to deliver the original, signed retail installment contract to Palisades during the sale of the unpaid delinquent accounts. Wilson argues that because Palisades is not in possession of the original, signed installment contract they are prohibited from enforcing the arbitration agreement.

Wilson cites numerous U.C.C. provisions and additional Illinois case law to support his position. However none of the cited materials specifically deal with an assignee being required to keep and transfer the original, signed version of a contract, to ultimately enforce a provision of that contract.

Palisades and Wilson admit that the original, signed retail installment contract was signed and taken by Wilson during the course of purchasing the vehicle from CarMax in 2004. Copies of the original signed installment contract were retained by Driver and subsequently transferred from Santander to Palisades and currently serve as the basis for Palisades's efforts to arbitrate Wilson's dispute. Pursuant to the Forward Flow Debt Purchase, Santander provided Palisades with duplicate copies of all account information pertaining to the delinquent accounts involved in the assignment of debt transaction. Palisades can enforce the arbitration agreement because it is in possession of a duplicate of the retail installment contract and has the rights of a holder as Santander's assignee. U.C.C. §§ 3-301, 1-201(21); 810 ILCS 5/3-301, 810 ILCS 5/1-201 (21). Wilson has not cited and the Court is unaware of any provision of Illinois contract law which requires a party to be in possession of the original, signed installment contract in order to enforce a provision of that contract. Wilson has not convinced the Court that the only means of exercising the contractual provisions of a contract is exclusively through possession of the original, signed installment contract.

Accordingly, we find that as an enforceable assignee of Wilson's retail installment contract Palisades can properly compel the arbitration of Wilson's claims.

## CONCLUSION

For the foregoing reasons, Palisades' motion to compel arbitration and to stay proceedings pending arbitration is granted.

/s/ Charles P. Kocoras
Charles P. Kocoras
United States District Judge

Dated: December 19, 2012